**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

James Buchl and Doren Chatinover,    )
    )
        Plaintiffs,    )    **ORDER RE MOTIONS**
    )    **TO COMPEL**
    vs.    )
    )
Gascoyne Materials Handling &    )
Recycling, LLC,    )    Case No.  1:17-cv-048
    )
        Defendant.    )

---

Before the court are motions to compel discovery, two by the defendant and one by the plaintiffs.  For the reasons set forth below the motions are granted in part and denied in part.

## I.    BACKGROUND

This action arises out of a business relationship between plaintiffs, James Buchl and Doren Chatinover, and defendant, Gascoyne Materials Handling & Recycling, LLC, (herein "defendant" or "Gascoyne") that was never formally documented and went wrong.  The parties have differing views as to what the nature of the relationship was and what caused it to end.  Plaintiffs now are suing Gascoyne on a variety of claims and Gascoyne has countersued plaintiffs.  Some discussion of the positions of the parties and the claims being asserted is necessary given the disputes over the scope of discovery.

It appears that the relationship between the parties that is now in dispute began when Buchl and another individual named Broe teamed up with Gascoyne to do electrical and instrumentation work on a large construction project at the refinery in Mandan, North Dakota, which at the time was owned by Tesoro.  Gascoyne was and still is a limited liability company that is 100% owned by its two members, William Pladson and William Dahlin.  It got its start providing landfill and recycling

1

services in North Dakota, with its principal office located in Dickinson, North Dakota. Gascoyne did not have the technical expertise to do the work on the Tesoro project. Buchl and Broe provided that. What Gascoyne did have that Buchl and Broe did not were the financial resources to fund the work and staff to provide home office support in terms of accounting, payroll, securing of insurances, etc.

The work on the Tesoro project was done under the auspices of a new division of Gascoyne entitled GMHR Field Services ("GMHR") with Buchl and Broe being independent contractors to GMHR. Gascoyne agreed to pay Buchl and Broe an hourly salary for their work in staffing and managing the project along with a 50% share of the profits at the end.

Because the Tesoro refinery project was a success, Buchl was interested in doing future projects with Gascoyne and, when Broe decided to pursue other opportunities, Buchl brought Chatinover on board. The two of them then proceeded to do other projects with Gascoyne during the period from 2010–2017 and it is this work that is now in dispute.

Plaintiffs contend that they had an oral agreement with Gascoyne that they collectively would have a 50% partnership interest in GMHR. Plaintiffs claim that, after there was disagreement over the reconciliation of the amounts owed them on the next big project after Tesoro, they attempted to memorialize their relationship in a 2012 draft agreement that Buchl prepared but was never signed by the parties. While not signed, plaintiffs contend this draft agreement governs the relationship of the parties because, according to them, Pladson agreed to sign it, but ultimately never did, and the parties subsequently acted in conformity with terms of the unsigned agreement—at least in their view. Among other things, the unsigned 2012 draft agreement (which both parties refer to the "2012 Goal Sheet") provided for the following:

- There would be 50%/50% split of profits and assets arising out of GMHR activities between Gascoyne and plaintiffs on all GMHR activities.

- Plaintiffs would diligently pursue new projects and provide on-site management on new projects acquired.

- Gascoyne would provide home office support in terms of accounting, payroll, and obtaining necessary insurances.

- In recognition that GMHR would be operating as a startup enterprise and may go periods between projects, plaintiffs would be paid a salary of between $12,000 and $14,000 per month while there was project work ongoing, and a $10,000 per month when no project was underway with the latter being a draw against outstanding and future profits payable to the plaintiffs.

- Profit sharing payments would only be made when there is money to support the payments and not before there is a positive cash flow on a project.[1]

Plaintiffs contend that, for the next several years, Pladson provided reconciliation statements that purported to set forth the project income, expenses, and the amount of profits to be split on projects completed during the past year. Plaintiffs allege that, from the very beginning, Pladson claimed improper and/or inflated expenses in his yearly reconciliations so as to reduce the profits that would be payable to plaintiffs and that this ultimately caused the relationship to deteriorate to the point where by late 2016 Pladson and Buchl were no longer talking. Plaintiffs further claim that, in early 2017, Pladson caused GMHR to stop paying them completely. Plaintiffs contend that,

---

[1] In the draft agreement, Gascoyne is referred to as GMHR, LLC. GMHR is referred to as GMHR Field Services,. The draft agreement states that GMHR, LLC is owned by Pladson and Dahlin and that GMHR Field Services is a division of GMHR, LLC.

3

because of their not being paid and Pladson's accounting chicanery, they were effectively frozen out of the partnership and for this reason had to start their own company, ION Field Services, LLC. ("ION Field Services").

Plaintiffs assert the following claims against Gascoyne: (1) a declaration that plaintiffs are entitled to 50% of GMHR's profits; (2) disassociation of partnership; (3) breach of fiduciary duty; (4) breach of joint venturer fiduciary duty; (5) breach of contract and/or implied contract; (6) appointment of receiver; (7) court ordered accounting; (8) court ordered dissolution of partnership; (9) unjust enrichment; (10) conversion; and (11) deceit/fraud. The damages plaintiffs claim are sweeping and include:

- The actual amount of their 50% share of profits on GMHR projects from 2011 through 2016 based on accurate accounting information, which amount they believe should be in the range of $3.5 million.

- 50% of the value of all GMHR assets.

- Unpaid salary payments.

- 50% of the profits on all GMHR projects that were ongoing in 2017 when they terminated their relationship with (or, in their spin, were "forced out" out of) GMHR.

- Lost future profits that would have been earned by GMHR but for the breakup.

- Startup costs for ION Field Services in an approximate amount of $1 million.

Gascoyne denies there ever was any partnership with plaintiffs. Gascoyne claims plaintiffs were at all times independent contractors of GMHR, as a division of Gascoyne, and on a project-by-project basis were paid monthly amounts in compensation for their services along with a 50% share of any profits after the deduction of projects costs. In support, Gascoyne points to, among other

things, the fact it did not sign the 2012 draft agreement and certain tax information that is consistent with plaintiffs being nothing more than independent contractors. Gascoyne specifically denies that plaintiffs ever obtained any ownership in the assets of GMHR.

In addition to denying the existence of any partnership or joint venture, Gascoyne claims that the expenses it used to determine the amount of plaintiffs' share of any profits were not only legitimate but likely understated, so that any new reconciliation would likely result in a reduction of the amounts payable to plaintiffs. Gascoyne further asserts a defense of accord and satisfaction based upon plaintiffs' acceptance of the profit amounts tendered by Gascoyne with respect to a number of the projects. For other projects, Gascoyne claims that plaintiffs are not entitled to any further compensation given the termination of their relationship with Gascoyne and/or their failure to properly perform the independent contract work they agreed to perform. Finally, Gascoyne contends that, if it should be determined that plaintiffs had a partnership or joint venture relationship with it, then plaintiffs must bear their share of the losses for the projects that suffered losses.

With respect to its counterclaim, Gascoyne contends that, beginning in 2016, plaintiffs started doing less and less work, delegating much of what they should have been doing to persons they had hired. According to Gascoyne, this included delegating the preparation of bids on several projects to Christopher Boushey, who did not have sufficient background and experience to prepare bids on large industrial or commercial projects. Gascoyne claims this resulted in GMHR underbidding several projects and losing a considerable amount of money. Gascoyne further claims that, after GMHR started losing money, it discovered a number of instances of alleged misconduct on the part of plaintiffs. According to Gascoyne, these included submission of false or padded expenses for reimbursement, submission of fraudulent invoices in the name of entities that plaintiffs

allegedly had an interest in or other relationships with for work that was not performed or for prices that were inflated, diversion of work to others with whom plaintiffs had a relationship rather than seeking to obtain that work on behalf of GMHR, and indications that plaintiffs were intending to terminate their relationship with Gascoyne. Gascoyne claims it was at this point that plaintiffs (1) voluntarily terminated their relationship with Gascoyne and in the process of doing so wrongfully kept information, equipment, and other assets that belong to it, (2) moved forward with their competing business (ION Field Services) that they had set up several months earlier, and (3) soon thereafter merged with another entity, Royal Electric LLC, that earlier had been formed by Boushey while doing work for GMHR.

Based on these allegations, Gascoyne asserts claims for breach of contract, fraud/deceit, conversion, unjust enrichment, declaratory judgment, breach of fiduciary duty, and breach of partnership duties. Gascoyne seeks compensation for (1) the value of the assets it claims plaintiffs took when they terminated their relationship, (2) the losses GMHR suffered as a result of underbids on several jobs, (3) the failure of plaintiffs to perform work commensurate with the salaries they were paid, (4) plaintiffs' share of project losses if they are successful in proving the existence of a partnership or joint venture, and (5) damages resulting in GMHR having to close up its operations, purportedly as result of plaintiffs forming a competing business and stealing employees and customers.

## II. GOVERNING LAW

Rule 26(b)(1) of the Federal Rules of Civil Procedure addresses the scope of discovery in civil actions. Specifically, it provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues

at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

See also Colonial Funding Network, Inc. v. Genuine Builders, Inc., 326 F.R.D. 206, 211 (D.S.D. 2018) ("The reason for the broad scope of discovery is that '[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.' 8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507–08 (1947)"). "Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery." Colonial Funding Network, 326 F.R.D. at 211 (citing Fed. R. Civ. P. 26(b)(1)).

Rule 37 of Federal Rules of Civil Procedure sets forth the recourse available to a party whose requests for discovery go answered. Specifically, it provides that, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). It further provides that "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Fed. R. Civ. P 37(a)(3)(A). Finally, it provides that a party may move to compel a response from a party who fails to answer interrogatories or produce requested documents. Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv).

## III.   **PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs in their motion to compel seek Gascoyne's compliance with respect to the parts of Plaintiffs' Request for Production of Documents (Set No. 1) (Doc. No. 52-7) set forth below:

### A.   **Request No. 3**

REQUEST NO. 3: Produce all bank statements, canceled check images and images of deposited checks for a time period of January, 2010 through present for all bank accounts held in the name of Gascoyne or GMHR Field Services.

Gascoyne claims that the only bank account information that is relevant is that related to GMHR and that it has gone through the requested information and turned over that which it claims is related to GMHR. But there are a number of problems with Gascoyne's lack-of-relevancy argument not only with respect to the bank records that are the subject of this document request but also a number of the others requests for financial information.

First, it appears GMHR, even as a "division" of Gascoyne, was not a standalone operation. Rather, Gascoyne provided financial and administrative support for the GMHR projects and part of the expenses claimed for this support include home office expense, insurance costs, interest on the project financing, shop charges, charges for use of equipment that Gascoyne claims it owned, etc. Plaintiffs claim that some of these expenses have been inflated or were otherwise not properly chargeable. This alone makes relevant at least some of Gascoyne's financial information (including bank records) that document these expenses.

Second, some of the expenses at issue would not be totally GMHR's expenses or totally Gascoyne other operations' expenses; some allocation is required. And, the determination what allocation is fair requires looking at the bigger picture, including at least some of Gascoyne's financial and accounting information.

Third, and particularly problematic with respect to the request for bank records, is the fact that Gascoyne did not bother to use a separate checking account for GMHR-related operations. And, given the nature of what is in dispute, plaintiffs are not required to accept Gascoyne's after-the-fact sorting of what it claims are bank records related to GMHR's activities and what records are not.

Finally, based on what limited information is before the court, it does appear that Pladson in several instances claimed expenses in the yearly reconciliations that are at best questionable.

While plaintiffs' need for broad financial discovery is clear enough from the foregoing, plaintiffs have supported their claim of need for broad financial discovery with a letter from the accounting firm that they have employed to conduct a forensic audit. In that letter, plaintiffs' forensic accounting firm has stated it will need not only the bank account information that is the subject of this document request, but also much of the financial information that is the subject of plaintiffs' motion to compel, in order to evaluate whether there has been a proper accounting for income, expenses, and profits by Gascoyne, and, if not, what amounts are now owed plaintiffs.

As for Gascoyne's contention that allowing discovery of all of its bank account information will give plaintiffs access to confidential, proprietary, and trade secret information that has nothing to do with GMHR's activities, Gascoyne has put itself in this position by (1) not having a clearly defined agreement with plaintiffs, and (2) by the manner in which it thereafter conducted its business. Further, it appears Gascoyne has closed GMHR's operations and it failed here to demonstrate that it is now competing with plaintiffs or ION Field Services. Given these points, Gascoyne's concerns can reasonably be alleviated by the bank record information being treated either as "attorneys eyes only" or "confidential" as set forth below.

Finally, to address what also may be in dispute, Gascoyne need only make the documents available in the manner in which they are kept for inspection and copying at one location—either where the bulk of the records are held or at the offices of its attorneys.[2]

COURT RULING: Gascoyne shall comply with Request No. 3 in accordance with the

---

[2] Plaintiffs did not in their document request specify a particular location for the production. Hence, the issues of where and how the production should be made were never properly teed up. Nevertheless, given the large volume of records that will have to be produced by both sides pursuant to this court's order, the court is loathe to impose on either party the obligation of copying and shipping those documents to the other party. Rather, absent an agreement of the parties, each party can inspect the documents where they are produced, copy what they determine is useful, and arrange for their own transportation.

foregoing, but may designate (1) the bank statements as "attorney eyes only," but subject to the proviso that plaintiffs' attorneys or their forensic experts may inquire of plaintiffs about specific matters in the statements that reasonably may relate to GMHR's activities, and (2) all of the other documents as "confidential" and subject to the court's existing confidentiality order. Also, because the volume of records may be large and both parties being required to supplement their discovery responses based on what follows, the court will give both parties 30 days to provide the information that the court is ordering must be produced.

## B.    Request No. 4

REQUEST NO. 4: Produce all Quickbooks backup files (.QBB or .QBW) or other accounting software backup files, for the years 2010 through present for both Gascoyne and GMHR Field Services.

COURT RULING:  Most of what the court has said with respect to Request No. 3 applies to Request No. 4.  Gascoyne shall produce the documents that are the subject of Request No. 4 but may designate the documents or information "attorneys eyes only" for purposes of the court's confidentiality order, but subject to the proviso that plaintiffs' attorneys or their forensic experts may inquire of plaintiffs about specific matters set forth in the files that reasonably may relate to GMHR's activities.

## C.    Request No. 5

REQUEST NO. 5: Produce all federal tax returns for Defendant and GMHR Field Services including all schedules and enclosures for calendar years 2010 through 2017.

There is a split in authority regarding the standard applied in determining the discoverability of tax returns. The two views are described as:

Courts have made it increasingly clear that tax returns in the hands of a taxpayer are not privileged from civil discovery. Nevertheless, judicial consensus exists that, as a matter of policy, great caution should be exercised in ordering the disclosure of tax returns. Unnecessary disclosure of tax returns is to be avoided.

> Examination of case law reveals the emergence of a judicially developed "qualified privilege ... that disfavors the disclosure of income tax returns as a matter of general federal policy." A two-prong test has been utilized to assess whether the qualified privilege should be overcome and a party's income tax returns should be disclosed. The court must determine whether (1) the tax return is relevant to the subject matter in dispute; and (2) a compelling need exists for the return, because the information sought is not obtainable from other sources. While the party seeking discovery of the tax returns bears the burden of establishing its relevance, the resisting party has the task to identify an alternative source for the information.
>
> In contrast, a minority of courts have held that the sole inquiry governing discovery of tax returns is whether the information contained in the return is relevant.

Terwilliger v. York Intern. Corp., 176 F.R.D. 214, 216–17 (W.D. Va. 1997) (internal citations omitted). "While the Eighth Circuit Court of Appeals has not addressed this issue, it appears that most district courts in the Eighth Circuit have adopted the two-prong test described in Terwilliger." Catipovic v. Turley, No. C11–3074, 2013 WL 1718061 at *5 (N.D. Iowa Apr. 19, 2013) (citing other Eighth Circuit district court cases).

Applying the two-part test, plaintiffs have the initial burden to show that the tax returns are relevant. If so, the court moves on to the second part, which examines whether the information in the returns is readily obtainable from another source. Catipovic, 2013 WL 1718061 at *5 (citing Ceridian, 610 F. Supp. 2d at 997). The defendant bears the burden of proof on the second part of the test. Id.

Here, the tax return information may contain relevant information with respect to the substance and consistency of accounting for GMHR's activity as well as how the relationship among the parties was treated or not treated. Further, plaintiffs' forensic expert has stated that having this information is important to its evaluation. For these reasons, the court will require

disclosure of the information but on an "attorney eyes only" basis.[3]

COURT RULING: Gascoyne shall produce the tax return information that is the subject of Request No. 5 but may designate this material as "attorney eyes only."

### D. Request No. 8

REQUEST NO. 8: Produce all monthly detailed financial statements including income statements and balance sheet for GMHR and GMHR Field Services for January 2010 through December 31, 2017 and interim financial statements as of the latest date available.

COURT RULING: For the reasons expressed with respect to Request No. 3, Gascoyne shall produce the information that is the subject of Request No. 8 but, for any financial statements that are for Gascoyne and not limited to GMHR, Gascoyne may designate the documents as "attorneys eyes only" but subject to the proviso that plaintiffs' attorneys or their forensic experts may inquire of plaintiffs about specific matters set forth in the documents that reasonably may relate to GMHR's activities.

### E. Request No. 11

REQUEST NO. 11: Produce all check registers and payroll registers for GMHR and GMHR Field Services and a complete vendor listing including any and all vendors paid from January 2010 to the present.

Gascoyne states its does not have vendor listing for GMHR and the court concludes that a vendor listing with respect to Gascoyne generally is likely not to be sufficiently probative and that the information plaintiffs need will be included in the other information to be disclosed. However, the reasons articulated for why Request No. 3 should be complied with apply here to any check and payroll registers.

---

[3] Plaintiffs must keep in mind that what is "sauce for the goose is sauce for the gander." If Gascoyne requests the same information from plaintiffs, the court expects it will be produced without objection since it too may be probative of how the plaintiffs contemporaneously viewed the relationship among the parties and represented it to the IRS as well as relevant to a number of Gascoyne's defenses and counterclaims.

COURT RULING:  For the reasons expressed with respect to Request No. 3, Gascoyne shall produce any check and payroll registers but may designate the material as "confidential" for purposes of the court's confidentiality order.

## IV.  DEFENDANT'S FIRST MOTION TO COMPEL

Gascoyne seeks in its first motion to compel compliance with the following portions of its Set II Interrogatories and Document Requests (Doc. No. 51-6) and Set III Document Requests (Doc. No. 51-10):

### A.  Set II Interrogatories and Document Requests

#### 1.  Interrogatory No. 1

INTERROGATORY NO. 1 (SET II): With respect to any businesses in which Plaintiffs have had an ownership interest, from January 1, 2016 through the present, including, but not limited to ION Field Services, LLC, identify for each business: (1) the name of the business, including, but not limited to, the legal name of any entity formed in connection with the business; (2) the date the business was formed; (3) all owners of the business, past and present, and the percentage of the business they own, and to the extent any owners are entities, identify the owners thereof; (4) all managers, officers, employees, and/or independent contractors of the business, past and present; (5) each project performed by the business for any customer; (6) each customer for whom the business has performed work; (7) each accountant or tax preparer that has provided services for the business; and (8) whether the business continues to exist.

Gascoyne argues that the information requested by this interrogatory is relevant to plaintiffs' damage claims.   For the most part, the court agrees.  Here, by the sweeping breadth of their claims and requested damages, plaintiffs have opened themselves up to discovery that is equally broad in a number of instances as what they are seeking from Gascoyne.  For example, plaintiffs are claiming that they are entitled to 50% of the profits on GMHR projects in progress as well as future lost profits.  This makes relevant not only what plaintiffs earned from their other sources but also the extent of their effort to mitigate their damages—at least under some of the theories of recovery that plaintiffs have pled.

The requested information is also relevant to several of Gascoyne's counterclaims, including particularly the claims for breach of contract and breach of fiduciary duty.

COURT RULING: Plaintiffs shall answer interrogatory No. 1, except it need not provide the names of all employees and independent contractors of the businesses that are the subject of this interrogatory.. Also, plaintiffs can deem the answer as "confidential" for purposes of the court's confidentiality order.

## 2. Request No. 1

REQUEST NO. 1 (SET II): With request to any businesses in which Plaintiffs have had an ownership interest, from January 1, 2016 through the present, including, but not limited to, ION Field Services LLC, produce all documents relating to the formation of any such businesses, including, but not limited to: (1) all articles of incorporation, bylaws, membership agreements, partnership agreements, or other entity formation and management documents, including all documents filed with any state's secretary of state; (2) all communications to or from Plaintiffs regarding the formation of or participation in any such business, including communications to or form actual or potential customers, business partners, employees, independent contractors, suppliers, vendors, lenders, and financiers; and (3) all notes, memoranda, presentations, prospectuses, business plans, business portfolios, customer lists, or other documents relating to the startup of any such business.

Gascoyne has clarified that it is seeking only those documents specifically detailed in the list. (Doc. No. 74).

The court agrees with Gascoyne that much of the requested information is relevant for the reasons set forth above with respect to Interrogatory No. 1 and also plaintiffs' claim of damages for the startup of ION Field Services in an approximate amount of $1 million. Further, the documents being sought are relevant to Gascoyne's claims that plaintiffs wrongfully and tortiously formed a competing business and stole customers and employees.

COURT RULING: Plaintiffs shall comply with Request No. 1, but plaintiffs' may designate the documents as "confidential" for purposes of the court's confidentiality order.

## 3. Request No. 2

> REQUEST NO. 2 (SET II): With respect to any businesses in which Plaintiffs have had an ownership interest, from January 1, 2016 through the present, including, but not limited to, ION Field Services LLC, produce all documents relating to the financial operation of any such businesses, including, but not limited to: (1) financial statements; (2) financial reports; (3) balance sheets; (4) income statements; (5) cash flow statements; (6) tax forms and returns; (7) documents showing income and expenses relating to each job or project performed by the business; and (8) any other documents compiling financial information relating to the business.

Gascoyne has clarified that it only is seeking documents specifically detailed in the list. (Doc. No. 74). The court agrees that the requested information is discoverable for the reasons articulated with respect to Request No. 1.

COURT RULING: Plaintiffs shall comply with Request No. 2, but may designate the documents as "attorney eyes only."

### 4. Request No. 3

> REQUEST NO. 3 (SET II): With respect to any businesses in which Plaintiffs have had an ownership interest, from January 1, 2016 through the present, including, but not limited to, ION Field Services LLC, produce all documents relating to the management or operation of any such businesses, including, but not limited to: (1) contracts and/or communications with employees or independent contractors, potential or actual; (2) contracts and/or communications with vendors or suppliers, potential or actual; and (3) contracts and/or communications with customers, potential or actual.

Gascoyne's request for management information with respect to other entities is too far afield from what is at issue in this case. With respect to the balance of what is requested, anything that might be discoverable is covered by other requests.

COURT RULING: Plaintiffs need not respond to Request No. 3. Gascoyne can later make a more targeted request for information if a need for the information can be demonstrated.

### 5. Request No. 4

> REQUEST NO. 4 (SET II): Produce all documents relating to your response to Interrogatory No. 1, Defendant's Interrogatories to Plaintiffs (Set II), or at all relied upon by you in providing your response to the same.

The documents sought here appear to be duplicative of what is being required to be produced

pursuant to more targeted requests and "relating to" the interrogatory answer is too vague.

COURT RULING: Plaintiff's need not respond to Request No. 4. Gascoyne can later make a more targeted request for information should that be necessary.

**B.      Set III Document Requests**

**1.      Request No. 1**

REQUEST NO. 1 (SET III): Produce all correspondence, including, but not limited to, letters, emails, and text messages, sent by each Plaintiff to the other Plaintiff, or received by each Plaintiff from the other Plaintiff, from 2010 to the present, referring or relating to: (1) Defendant, including its Field Services division; (2) any owner, employee, independent contractor, vendor, supplier, actual customer, or potential customer of Defendant, including its Field Services division; (3) any equipment, property, or assets of Defendant, including its Field Services division; (4) Ion Field Services, LLC, Royal Electric, LLC, or any other company owned by or affiliated with Plaintiffs or one of their companies; and/or (5) any work or project bid or performed for Defendant, including its Field Services division, or for Ion Field Services, LLC, Royal Electric, LLC, or any other company owned or affiliated with Plaintiffs or one of the companies.

Keeping in mind that this document request encompasses only communications between plaintiffs and the breadth of plaintiffs' claims and damage demands, the court concludes for the reason expressed above with respect to Interrogatory No. 1 and Request No. 1 that the requested documents are relevant and material with respect to plaintiffs' claims and Gascoyne's counterclaims, with one exception. The exception is for bids made but which did not result in an award of a project. The time period for that portion shall be limited to the period from January 1, 2016 to the present.

COURT RULING: Plaintiffs shall comply with Request No. 1, except with respect to bids that did not result in an award for which relevant time period is limited to January 1, 2016 to the present.

**2.      Request No. 2**

REQUEST NO. 2 (SET III): Produce all correspondence, including, but not limited to, letters, emails, and text messages, sent by each Plaintiff to Christopher Boushey, or received by each Plaintiff from Christopher Boushey, from 2010 to the present, referring or relating

to: (1) Defendant, including its Field Services division; (2) any owner, employee, independent contractor, vendor, supplier, actual customer, or potential customer of Defendant, including its Field Services division; (3) any equipment, property, or assets of Defendant, including its Field Services division; (4) Ion Field Services, LLC, Royal Electric, LLC, or any other company owned by or affiliated with Plaintiffs or one of their companies; and/or (5) any work or project bid or performed for Defendant, including its Field Services division, or for Ion Field Services, LLC, Royal Electric, LLC, or any other company owned or affiliated with Plaintiffs or one of the companies.

Gascoyne alleges that Boushey, while master electrician of record for Gascoyne, formed his competing company (Royal Electric, LLC) and that plaintiffs were aware of this but let him continue his relationship with Gascoyne. Gascoyne alleges plaintiffs signed off on certain of Boushey's expense reports and per diems that were allegedly false. Gascoyne alleges (and plaintiffs acknowledge) that they merged ION Field Services with Royal Electric shortly after terminating their relationship with Gascoyne, and it is suspected this might have been in the works for some time prior, including (1) prior to plaintiffs terminating their relationship with Gascoyne when they owed a fiduciary duty to Gascoyne and (2) during when plaintiffs allowed Boushey, at GMHR's expense, to go through advanced training despite his having set up an allegedly competing business and just prior to his severing his relationship with GMHR. Gascoyne further claims that Pladson had a critical conversation with Boushey in the latter part of 2016 in which Pladson purportedly stated he expected plaintiffs to be leaving because they were upset with the profit sharing and this purportedly was what motivated Pladson to cause GMHR to stop paying plaintiffs. Finally, Gascoyne claims that plaintiffs negligently and in breach of their fiduciary duties allowed Boushey to prepare bids on one or more projects of which GMHR ultimately suffered a loss resulting from underbidding the projects. As noted earlier, Gascoyne claims that Boushey lacked the necessary experience and background to make the bids.

The court concludes the request is relevant given the foregoing contentions but will limit

the period of time under consideration from July 1, 2015 to the present.

COURT RULING: Plaintiff shall comply with Request No. 2 but limited to the time period from July 1, 2015 to the present.

### 3. Request No. 3

REQUEST NO. 3 (SET III): Produce all correspondence, including, but not limited to, letters, emails, and text messages, sent by each Plaintiff to Ricky Williams, or received by each Plaintiff from Ricky Williams, from 2010 to the present, referring or relating to: (1) Defendant, including its Field Services division; (2) any owner, employee, independent contractor, vendor, supplier, actual customer, or potential customer of Defendant, including its Field Services division; (3) any equipment, property, or assets of Defendant, including its Field Services division; (4) Ion Field Services, LLC, Royal Electric, LLC, or any other company owned by or affiliated with Plaintiffs or one of their companies; and/or (5) any work or project bid or performed for Defendant, including its Field Services division, or for Ion Field Services, LLC, Royal Electric, LLC, or any other company owned or affiliated with Plaintiffs or one of the companies.

Gascoyne alleges that Ricky Williams, an employee of Gascoyne, became Royal Electric's master electrician of record while still employed by Gascoyne. The request is relevant but limited to the time period from July 1, 2015 through 2017.

COURT RULING: Plaintiff shall comply with Request No. 3 but limited to the time period from July 1, 2015 through 2017.

### 4. Request No. 4

REQUEST NO. 4 (SET III): Produce all correspondence, including, but not limited to, letters, emails, and text messages, sent by each Plaintiff to T.J. Botkin, or received by each Plaintiff from T.J. Botkin, from 2010 to the present, referring or relating to: (1) Defendant, including its Field Services division; (2) any owner, employee, independent contractor, vendor, supplier, actual customer, or potential customer of Defendant, including its Field Services division; (3) any equipment, property, or assets of Defendant, including its Field Services division; (4) Ion Field Services, LLC, Royal Electric, LLC, or any other company owned by or affiliated with Plaintiffs or one of their companies; and/or (5) any work or project bid or performed for Defendant, including its Field Services division, or for Ion Field Services, LLC, Royal Electric, LLC, or any other company owned or affiliated with Plaintiffs or one of the companies.

Gascoyne similarly alleges that T.J. Botkin, a Gascoyne employee, was hired by Boushey

to work for Royal Electric, while Botkin was still working for defendants. The same reasoning used in ordering discovery for Williams, applies for Botkin.

COURT RULING:  Plaintiff shall comply with this Request No. 4 but limited  to the time period from July 1, 2015 through 2017..

### 5. Request No. 5

REQUEST NO. 5 (SET III): Produce all correspondence, including, but not limited to, letters, emails, and text messages, sent by each Plaintiff to each actual or potential customer of Defendant, including its Field Services division, or received by each Plaintiff from each actual or potential customer of Defendant, including its Field Services division, from 2010 to the present.

This information being sought is relevant to plaintiffs' claims for damages and the mitigation thereof for the period from January 1, 2016, to the present.  The information is also relevant to Gascoyne's counterclaim, particularly the claims for breach of contract and breach of fiduciary duty.

COURT RULING:  Plaintiff shall comply with this Request No. 5 but limited to the time period from January 1, 2016 to the present.

### 6. Request Nos. 6–12

In Request Nos 6-16, Gascoyne seeks all documents referring or relating to GMHR projects 1419, 1409, 1337, 1404, 1406, 1528, and 1505.  Plaintiffs objected to each of these requests as follows:

Objection is made to the foregoing Request on the basis that it seeks documents that are generally within the control and/or custody of the Defendant(s), their agents, and their assigns. Accordingly, the Defendant's request is not reasonably calculated to lead to the discovery of admissible evidence. In an effort to facilitate discovery, subject to the foregoing objections and without waiver thereof, Plaintiffs respond as follows: see documents already produced in this case. Investigation and discovery are ongoing.

The mere fact that Gascoyne may have some of the documents is not a legitimate objection

nor is "investigation and discovery are ongoing" a proper response. Plaintiffs have not and cannot claim the requested documents are not relevant, particularly since their own discovery requests of Gascoyne encompass the same type of information. In fact, plaintiffs' litigating position is that they have a partnership interest in GMHR with Gascoyne. And, under this theory, the requested documents would presumptively belong to the partnership with each partner having the right of inspection. See N.D.C.C. § 45-16-03; see generally 59A Am. Jur. 2d Partnership § 601 (May 2019 update).

In short, plaintiffs' objections are specious. And, this is without considering the relevancy of the information being sought in terms of Gascoyne's counterclaims. The court will return to this subject when it addresses the claims for attorney fees and costs for the bringing of the motion at issue.

The court appreciates that Gascoyne's demands may involve a large volume of documents. But, so do plaintiffs' demands. As plaintiffs themselves put it in support of their discovery demands, "[t]his is a financial case" and their own forensic expert has stated that it needs access to a broad swath of information to make its forensic accounting, including information that would allow it to test the legitimacy of the income and expense items. In fact, one would expect that plaintiffs have already assembled and delivered to their forensic accountants much of the requested information that is in their possession—including that which would provide backup for the accounting for GMHR.

That being said, the same rules that the court set forth earlier with respect to Gascoyne's production apply here. Absent some other agreement between the parties, plaintiffs shall make the documents available for inspection at one location (which may be the offices of their attorneys) and

Gascoyne can decide on what it actually wants to copy.

<u>COURT RULING</u>:  Plaintiffs shall comply with Request Nos. 6–12.  .

### 7.    **Request Nos 13–22**

<u>REQUEST NO. 13 (SET III)</u>: Produce all documents referring or relating to Western Engineering Group, L.L.C., that relate to Defendant and/or its Field Services division, including, but not limited to, invoices, receipts, any correspondence between Plaintiffs and employees or owners of Western Engineering Group, L.L.C., and any correspondence between Plaintiffs and David Edwards.

<u>REQUEST NO. 14 (SET III)</u>: Produce all documents referring or relating to MCR Drafting Services, that relate to Defendant and/or its Field Services division, including, but not limited to, invoices, receipts, any correspondence between Plaintiffs and employees or owners of MCR Drafting Services and any correspondence between Plaintiffs and Marketa Rezek.

<u>REQUEST NO. 15 (SET III)</u>: Produce all documents referring or relating to Brandon Dodge on Broadway that relate to Defendant and/or its Field Services division, including, but not limited to, invoices, receipts, account statements, and any correspondence between Plaintiffs and employees or owners of Brandon Dodge on Broadway.

<u>REQUEST NO. 16 (SET III)</u>: Produce all documents referring or relating to Northwest Tire, Inc., that relate to Defendant and/or its Field Services division, including, but not limited to, invoices, receipts, account statements, and any correspondence between Plaintiffs and employees or owners of Northwest Tire, Inc.

<u>REQUEST NO. 17 (SET III)</u>: Produce all documents referring or relating to Dakota Signwerks that relate to Defendant and/or its Field Services division, including, but not limited to, invoices, receipts, account statements, and any correspondence between Plaintiffs and employees or owners of Dakota Signwerks.

<u>REQUEST NO. 18 (SET III)</u>: Produce all documents referring or relating to Border States Electric Supply that relate to Defendant and/or its Field Services division, including, but not limited to, invoices, receipts, account statements, and any correspondence between Plaintiffs and employees or owners of Border States Electric Supply.

<u>REQUEST NO. 19 (SET III)</u>: Produce all documents referring or relating to UL, LLC, that relate to Defendant and/or its Field Services division, including, but not limited to, invoices, receipts, account statements, and any correspondence between Plaintiffs and employees or owners of UL, LLC.

<u>REQUEST NO. 20 (SET III)</u>: Produce all documents referring or relating to Pacific Steel and Recycling that relate to Defendant and/or its Field Services division, including, but not limited to, invoices, receipts, account statements, and any correspondence between Plaintiffs and employees or owners of Pacific Steel and Recycling.

<u>REQUEST NO. 21 (SET III)</u>: Produce all documents referring or relating to the I Don't

Know Bar that relate to Defendant and/or its Field Services division, including, but not limited to, invoices, receipts, account statements, and any correspondence between Plaintiffs and employees or owners of I Don't Know Bar.

REQUEST NO. 22 (SET III): Produce all documents referring or relating to Oddfellows Lodge that relate to Defendant and/or its Field Services division, including, but not limited to, invoices, receipts, account statements, and any correspondence between Plaintiffs and employees or owners of Oddfellows Lodge.

All of these requests relate to allegations of wrongful conduct on the part of plaintiffs and are relevant to Gascoyne's affirmative claims of breach of contract and breach of fiduciary duty as well as to certain of its defenses to plaintiffs' claims  While some of the matters appear to be trivial and if presented to the jury may smack of desperation on the part of Gascoyne, the court is not prepared at this point to conclude that the matters are so far afield or lack proportionality that discovery should not be presented.  Further, much of the requested information would appear to involve documents belonging to the partnership that plaintiffs are claiming and with respect to which Gascoyne would then have a presumptive right of inspection

COURT RULING:  Plaintiffs shall comply with this Request Nos. 13–22.

## V.     DEFENDANT'S SECOND MOTION TO COMPEL

Defendant in its second motion to compel seeks compliance by plaintiffs with the following portions of Defendant's Interrogatories to Plaintiffs (Set III) (Doc. No. 72-2) and Defendant's Request for Production of Documents to Plaintiffs (Set IV) (Doc. No. 71-1).

### A.     Interrogatory Nos. 1-2

INTERROGATORY NO. 1 (SET III): For each period of time exceeding two days, for 2016 and the first two months of 2017, during which Plaintiff Chatinover was not in North Dakota, state: (a) the dates of the absence; (b) where Plaintiff Chatinover was located; and (c) the reason for Plaintiff Chatinover's absence.

INTERROGATORY NO. 2 (SET III): For each period of time exceeding two days, for 2016 and the first two months of 2017, during which Plaintiff Buchl was not in North Dakota, state: (a)  the dates of the absence; (b) where Plaintiff Buchl was located; and (c) the reason for Plaintiff Buchl's absence.

Defendant subsequently stated it was agreeable to a modification of these interrogatories so that plaintiffs need only respond with respect to absences exceeding a week. (Doc. No. 74).

Plaintiffs originally resisted complying with these interrogatories on grounds of lack of relevancy and since have asserted that the questions were asked and answered in the depositions of the parties. The court agrees that the information is relevant to the claims that plaintiffs were not attending to their duties during much of 2016 and the first part of 2017 as well as being engaged in efforts to set up a competing business. As for the deposition testimony, plaintiffs could only provide general information and agreed that they had other information available to them.

COURT RULING: Plaintiffs shall answer Interrogatory Nos. 1–2, but substituting "exceeding one week" for "exceeding two days."

**B.      SET IV Requests for Production**

**1.      Request Nos. 1-3**

REQUEST NO. 1 (SET IV): Produce all Documents, including, but not limited to, correspondence, bid documents, invoices, receipts, notes, and memoranda, regarding or relating to the Mandan City Water Treatment Project (Job No. 1624).

REQUEST NO. 2 (SET IV): Produce all Documents, including, but not limited to, correspondence, bid documents, invoices, receipts, notes, and memoranda, regarding or relating to the Consolidated Construction 77Plex in Watford City Project (Job No. 1626).

REQUEST NO. 3 (SET IV): Produce all Documents, including, but not limited to, correspondence, bid documents, invoices, receipts, notes, and memoranda, regarding or relating to the Westcon Industries Basin Electric Pioneer Station Project (Job No. 1702).

Plaintiffs object to these requests on relevancy grounds. The court disagrees. These requests relate to jobs that Gascoyne claims it lost money on. The information sought is relevant to plaintiffs' claims that they had a partnership and joint venture interest in or with GMHR and Gascoyne's contention that plaintiffs must share in the losses. In addition, the information is relevant to Gascoyne's counterclaim.

Plaintiffs also claim that Gascoyne should be satisfied with documents it obtained from non-party Boushey. This contention is specious.

COURT RULING: Plaintiffs shall comply with Request Nos. 1–3.

### 2. Request Nos. 4–5

REQUEST NO. 4 (SET IV): Produce all Documents, including, but not limited to, calendars, correspondence, itineraries, receipts, notes, and memoranda, regarding or relating to each period of time exceeding two days, for 2016 and the first two months of 2017, during which Plaintiff Chatinover was not in North Dakota.

REQUEST NO. 5 (SET IV): Produce all Documents, including, but not limited to, calendars, correspondence, itineraries, receipts, notes, and memoranda, regarding or relating to each period of time exceeding two days, for 2016 and the first two months of 2017, during which Plaintiff Buchl was not in North Dakota.

Gascoyne has subsequently agreed to limiting the above requests to plaintiffs' calendars. The information is relevant for reasons already expressed.

COURT RULING: Plaintiffs shall produce their calendars for 2016 and first two months of 2017 in their entirety.

## VI. REQUESTS FOR AN AWARD OF ATTORNEY'S FEES AND COSTS

Both parties seek an award of attorney's fees and costs. The court declines to do so because of its conclusion that both parties failed to comply with a number of discovery requests, all or in part, without sufficient justification for the refusal to do.

More particularly, it should not have taken a court order for Gascoyne to provide the information that the court has ordered it must produce. As for plaintiffs, they have demanded discovery that is broad and comprehensive, but, when the shoe is on the other foot, have essentially taken the position they need not be bothered with discovery equally as comprehensive despite the expansive nature of their claims and damage demands. Further, plaintiffs ignore their own contribution to the situation they now find themselves in. That is, (1) their doing work for

24

Gascoyne without a more defined relationship, and (2) there doing so until the first part of 2017 despite believing as far back as 2011 or early 2012 that they were not being treated fairly by Gascoyne.

In this instance, both parties will be required to bear their own fees and costs with respect to the motions to compel. However, the court will require the attorneys to send a letter to their clients explaining that the increased costs and delays in the case resulting from the discovery disputes are the result of <u>both</u> parties having failed to reasonably fulfill their discovery obligations.

## VII. <u>ORDER</u>

Based on the foregoing, it is hereby **ORDERED** as follows:

1. Plaintiffs' motion to compel discovery (Doc. No. 52) is **GRANTED IN PART** and **DENIED IN PART**. Defendant shall comply with the court's rulings as set forth above.

2. Defendant's motion to compel discovery (Doc. No. 49) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs shall comply with the court's rulings as set forth above.

3. Defendant's second motion to compel discovery (Doc. No. 70) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs shall comply with the court's rulings as set forth above.

4. Unless otherwise agreed to by the parties in writing, the parties shall fully comply with the court's rulings as set forth above within 30 days.

5. Any documents or other information that the court has stated may be designated "confidential" and subject to the court's prior confidentiality order, may not be used

by the parties for any purpose other than this lawsuit absent agreement of the parties or further order of the court.

6.     Except as specifically provided for otherwise in the court's rulings, any documents or other information that the court has stated may be designated "attorney eyes only" may only be viewed by the attorneys for the party to whom the documents are produced or that party's experts and, in all other respects, shall be treated as confidential and subject to the court's confidentiality order. Prior to allowing an expert's access to"attorney eyes only" documents or other information, the expert must agree in writing that the documents and information will not be shared with the party for whom the expert is employed, except as specifically authorized by this order, and that the documents will in all other respects shall treated as confidential and subject to the court's confidentiality order. The parties are free, however, to agree to some other treatment of the "attorney eyes only" documents and information, all or in part, provided it is done in writing.

7.     The court declines to award either party the costs and expenses in the bringing of the motions to compel for reasons articulated above. However, the attorneys for both parties shall forward a copy of this order to their clients along a cover letter that shall include the statement: "The court has determined that the increased costs and the delays in this case resulting from the discovery disputes are the result of <u>both</u> parties having failed to reasonably fulfill their discovery obligations."

Dated this 25th day of June, 2019.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr.

26

United States Magistrate Judge